## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TYKIEF LASHAWN DUNN,        *
# 17665-003,                *
                            *
    Petitioner,       *
                            * CRIMINAL NO. 19-00089-WS-B
vs.                         * CIVIL ACTION NO. 21-00362-WS-B
                            *
UNITED STATES OF AMERICA,   *
                            *
    Respondent.       *

### REPORT AND RECOMMENDATION

Petitioner Tykief Lashawn Dunn ("Dunn"), a federal prisoner proceeding *pro se*, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. (Doc. 64).  This matter has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings, and it is now ready for consideration.[1]  Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2]

---

[1] United States District Judge William H. Steele presided over the proceedings in this action.  The undersigned has reviewed Dunn's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings in this case.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively

1

Following consideration of all of the relevant pleadings in this case, the undersigned hereby recommends that Dunn's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 64) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Tykief Lashawn Dunn. The undersigned further recommends that Dunn be found not entitled either to a certificate of appealability or to proceed *in forma pauperis* on appeal.

I.    <u>BACKGROUND</u>

In March 2019, a grand jury indicted Dunn on the following nine counts: possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (counts one through four, eight, and nine); possession with intent to distribute marijuana in violation of U.S.C. § 841(a)(1) (count five); using, carrying, or possessing a firearm during and in relation to a drug trafficking felony in violation of 18 U.S.C. § 924(c)(1)(A) (count six), and possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g)(1) (count seven).  (Doc. 1).

On September 27, 2019, Dunn pled guilty to counts four and six of the indictment pursuant to a written plea agreement. (Docs. 28, 61).  The plea agreement contained a limited waiver of right

_____

contradicted by the record.  <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989).

to appeal and waiver of collateral attack. (Doc. 26-1 at 11-12). The agreement additionally indicated that Dunn had read and discussed the plea agreement with his lawyer, signed the document, agreed that the incorporated factual resume was true and accurate in every respect, and stipulated that the Government could prove the facts set forth in the document beyond a reasonable doubt. (Id. at 14).

The incorporated factual resume included a recitation of the elements of the offenses charged. (Id. at 15). It additionally detailed the factual basis underlying the offenses, which Dunn admitted was true and correct. (Id. at 16-19). The factual resume noted that Dunn sold methamphetamine to a confidential informant on three occasions, and that a subsequent search of Dunn's residence, pursuant to a search warrant, uncovered methamphetamine ice, cash, digital scales, two bags of marijuana, and a revolver. (Id. at 16-17). Per the factual resume, the methamphetamine from the second controlled buy and the methamphetamine found at Dunn's residence were 100 percent pure. (Id.). Dunn was arrested on state charges but thereafter made bail. (Id. at 18).

Upon his release, Dunn again sold 100 percent pure methamphetamine to a confidential informant. (Id.). Later on the same day, Dunn was the subject of a routine traffic stop. (Id.). A deputy with a drug-detecting dog arrived to assist with the stop, and the dog alerted to the driver's door of Dunn's vehicle. (Id.

at 19). The deputies then uncovered two bags of methamphetamine on Dunn's front passenger seat. (Id.). Lab testing confirmed the methamphetamine was 100 percent pure. (Id.). In the factual resume, the parties agreed that Dunn was accountable for one kilogram of methamphetamine ice as relevant conduct, and that the Government could prove that amount beyond a reasonable doubt. (Id.).

During the sworn plea colloquy, the Court determined that Dunn was competent, that his plea was knowing and voluntary, that Dunn understood the charges against him, that he had discussed his case with his attorney, and that he wished to enter a guilty plea. (Doc. 61 at 4-8, 23). The Court additionally discussed the limited waiver of appeal. (Id. at 12). Finally, during the plea hearing, counsel for the Government read the elements of Dunn's offenses, defense counsel recited the factual resume, and Dunn agreed that the Government could prove the facts contained in the factual resume at trial. (Id. at 15-22). The Court accepted Dunn's guilty plea and adjudged him guilty. (Docs. 29, 31).

The presentence investigation report ("PSR") detailed the same facts that were set forth in the factual resume. (See Doc. 36 at 5-7). The PSR reported that Dunn's total offense level and criminal history category yielded a guideline imprisonment range of 168 to 210 months for count four, plus a 60-month mandatory minimum consecutive term for count six. (Id. at 7-10, 13).

On March 3, 2020, the Court held a sentencing hearing, during which defense counsel confirmed that he had discussed the PSR with Dunn, and Dunn stated under oath that he understood the contents of the PSR. (Doc. 60 at 3). Dunn did not object to the PSR. (Id.). The Court adopted the PSR as published and ultimately sentenced Dunn to an aggregate term of 228 months' imprisonment, to be followed by concurrent terms of five and three years of supervised release. (Doc. 49 at 2-3; Doc. 50 at 1; Doc. 60 at 3, 15-16). On the Government's motion, the Court dismissed the remaining counts. (Doc. 49 at 1; Doc. 60 at 17-18).

Dunn timely appealed. (Doc. 44). Appellate counsel filed an Anders brief and motion to withdraw, asserting that there were no meritorious issues to be raised. (Doc. 62 at 2). Upon review, the Eleventh Circuit Court of Appeals found no arguable issues of merit, granted counsel's motion to withdraw, and affirmed Dunn's convictions and sentences. (Id.); see United States v. Dunn, 819 F. App'x 889 (11th Cir. 2020) (Mem).

Dunn timely filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. (Doc. 64). Dunn's motion asserts a claim of ineffective assistance of counsel and, in its entirety, sets forth the following seven grounds for his claim:

1. Counsel failed to subject the prosecution's case to meaningful adversarial testing regarding the 'purity level' assigned by the Government to the

methamphetamine which petitioner was charged with possessing and selling.

2.    Counsel failed to make an informed decision concerning the government's application of the 'purity-based penalties' for methamphetamine in petitioner's case.

3.    Counsel failed to obtain the results of a toxicology test performed by an independent toxicology expert.

4.    Counsel did not inform petitioner of the laws governing the sentencing factors and enhancements involved in a methamphetamine case.

5.    Counsel failed to present warranted objections to inaccuracies in the PSI, thereby denying petitioner's right to be sentenced based on accurate information.

6.    Counsel failed to challenge the credibility or trustworthiness of MCSO Deputy, Clint Law's proffered statements concerning petitioner's conduct upon his arrest.

7.    Counsel made no objections to the execution of the 'no-knock' search warrant, thereby failing to preserve the question of probable cause for the search as well as other errors of the Government and counsel.

(Id. at 4-5).  In response, the Government argues that Dunn's claims are without merit and his motion should be denied.  (Doc. 68).  Specifically, the Government asserts Dunn's claims are not sufficiently pled, are waived, or fail on the merits.  (Id.).  Dunn subsequently filed a reply.  (Doc. 72).  Thus, Dunn's motion is ripe for resolution.

## II.  LEGAL STANDARDS

### A.  General Standards of Review Under 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a federal prisoner may "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." Winthrop-Redin v. United States, 767 F.3d 1210, 1215-16 (11th Cir. 2014). However, "[o]nce the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted." United States v. Frady, 456 U.S. 152, 164 (1982) (noting that this is especially true when a defendant "already has had a fair opportunity to present his federal claims to a federal forum"). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Id. (internal quotation marks, citations, and footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the

> court shall . . . grant a prompt hearing thereon,
> determine the issues and make findings of fact and
> conclusions of law with respect thereto." [28 U.S.C.] §
> 2255(b). A petitioner is entitled to an evidentiary
> hearing if he "alleges facts that, if true, would entitle
> him to relief." Aron[ v. United States], 291 F.3d [708,]
> 715 [(11th Cir. 2002)] (quoting Holmes v. United States,
> 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner
> need only *allege*—not prove—reasonably specific, non-
> conclusory facts that, if true, would entitle him to
> relief." Id. at 715 n.6. However, a district court need
> not hold a hearing if the allegations are "patently
> frivolous," "based upon unsupported generalizations," or
> "affirmatively contradicted by the record." Holmes, 876
> F.2d at 1553 (quoting United States v. Guerra, 588 F.2d
> 519, 520-21 (5th Cir. 1979)); see, e.g., Lynn v. United
> States, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because
> the . . . affidavits submitted by Lynn amount to nothing
> more than mere conclusory allegations, the district
> court was not required to hold an evidentiary hearing on
> the issues and correctly denied Lynn's § 2255 motion.").

Winthrop-Redin, 767 F.3d at 1216 (footnote omitted); accord, e.g.,

Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015).

In making this determination, the Court is aware that it must

"liberally construe *pro se* filings, including *pro se* applications

for relief pursuant to § 2255." Winthrop-Redin, 767 F.3d at 1215.

**B. Ineffective Assistance of Counsel**

The Sixth Amendment gives criminal defendants the right to

effective assistance of counsel. U.S. Const. amend. VI; Strickland

v. Washington, 466 U.S. 668, 684-86 (1984). "To establish an

ineffective assistance of counsel claim, a defendant must show

that (1) 'counsel's representation fell below an objective

standard of reasonableness' and (2) that such failure prejudiced

him in that 'there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting Strickland, 466 U.S. at 687–88, 694).

"Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted); see also Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both Strickland prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a Strickland claim, and both prongs must be proved to prevail."). "The Strickland test is not easily met; . . . 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far

between.'" Johnson, 256 F.3d at 1176 (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." Waters, 46 F.3d at 1518; accord, e.g., Burt v. Titlow, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ."). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." Atkins v. Singletary, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential." [Strickland, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." Id. (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," . . . in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> Under the second, or "prejudice," prong of Strickland, a petitioner must "affirmatively prove prejudice" by

showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." Id. Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Id. at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695, 104 S. Ct. at 2069.

Brownlee v. Haley, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (citing Strickland, 466 U.S. at 89-90) (internal quotation marks and citations omitted).

The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). In that context, the first part of the Strickland analysis is nothing more than a restatement of

the standard of attorney competence. Id. "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

### C. Effect of Guilty Plea

The "concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). "A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." Wilson, 962 F.2d at 997; see also, e.g., United States v. Brown, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quoting United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); United States v. Saac, 632 F.3d 1203, 1208 (11th Cir. 2011) ("Generally, entering a guilty plea waives a defendant's right to

all non-jurisdictional challenges to a conviction.") (quoting United States v. Bonilla, 579 F.3d 1233, 1240 (11th Cir. 2009)).

Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley, 523 U.S. at 621 (citing Mabry v. Johnson, 467 U.S. 504, 508 (1984)). Thus, where, as here, a § 2255 motion is filed collaterally challenging a conviction obtained pursuant to a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989); see also Bousley, 523 U.S. at 618 ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).

## III. ANALYSIS

### A. Dunn's Plea was Knowing and Voluntary

Dunn has not claimed that his plea was not entered knowingly and voluntarily or otherwise challenged the validity of his guilty plea. Regardless, to the extent that Dunn's filings can be interpreted to assert that his counsel's actions rendered his guilty plea invalid, it is clear from the record that any such argument would be without merit.

As discussed *supra*, by entering a plea of guilty, Dunn waived all non-jurisdictional challenges to the constitutionality of his

13

conviction, and only an attack on the voluntary and knowing nature of his plea can be sustained.  See Wilson, 962 F.2d at 997.  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an "affirmative showing" on the record that the plea was intelligent and voluntary.  See Boykin v. Alabama, 395 U.S. 238, 242 (1969). Accordingly, the "court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curium).

To ensure a defendant understands the consequences of his plea, the court should inform the defendant of several rights, including: the right to plead not guilty; the right to a trial by jury, including the right to present evidence, testify, confront and cross-examine witnesses, and be protected from compelled self-incrimination; the right to be represented by counsel and, if necessary, to have court-appointed counsel; the nature of each charge to which defendant is pleading guilty; any maximum possible penalty, including imprisonment, fine, and a term of supervised release; any mandatory minimum penalty; the court's authority to order restitution; and the court's obligation to calculate the applicable guideline range and to consider that range, possible

departures, and other sentencing factors under 18 U.S.C. § 3553(a). See Fed. R. Crim. P. 11(b)(1)(A)-(O). Furthermore, there is a strong presumption that statements made during the plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). Accordingly, a defendant "bears a heavy burden" to show that his statements made under oath at the plea colloquy were false. United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam).

Here, the record reflects that the plea colloquy was thorough, and the transcript of the plea hearing reflects that Dunn was informed of and understood the rights provided under Rule 11. (See Doc. 61). Moreover, nothing in the record reflects that Dunn had any reservations or hesitations while entering his plea. Finally, at the plea hearing, the Court found that Dunn was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and consequences of his plea, and that his plea was knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offenses. (See id. at 23). As a result, the record before this Court confirms that Dunn's plea was knowing and voluntary. Accordingly, to the extent Dunn's motion asserts that his plea was not knowing and voluntary, such an argument is without merit.

**B. Ineffective Assistance of Counsel**

In his § 2255 motion, Dunn asserts seven claims of ineffective assistance of counsel. Dunn makes no distinction between those actions of his counsel that occurred prior to his guilty plea from those that occurred after. As discussed *supra*, because Dunn's plea was knowing and voluntary, his claims of ineffective assistance of counsel which did not inform his decision to plead guilty are waived. Nevertheless, the Court will address each ground of ineffective assistance of counsel asserted by Dunn, in turn.

1. Counsel's failure to challenge the 'purity level' of the methamphetamine associated with Dunn's crimes.

Dunn categorically states that his counsel's failure "to subject the prosecution's case to meaningful adversarial testing regarding the 'purity level' assigned by the Government to the methamphetamine which petitioner was charged with possessing and selling" supports an ineffective assistance of counsel claim. (See Doc. 64 at 4). Dunn's claim is without merit.

First, Dunn presents no argument that his counsel's action informed his decision to plead guilty, and, as discussed above, Dunn knowingly and voluntarily entered his guilty plea. Accordingly, Dunn's ineffective assistance of counsel claim as it relates to the actions of his counsel which occurred *prior* to the entry of his guilty plea are waived. See Tollett v. Henderson,

411 U.S. 258, 267 (1973). Second, Dunn has provided no factual basis upon which his counsel could have relied in challenging the purity level of the subject methamphetamine nor has he explained how such a challenge would have resulted in a reasonable probability that the result of his case would have been different. See Wilson, 962 F.2d at 998. Indeed, Dunn does not assert that the drugs he possessed were not as pure as the Government determined or that the testing performed was inaccurate. Moreover, the details presented in the factual resume (which Dunn knowingly and voluntarily affirmed was true and accurate in every respect) establish the purity of the subject drugs. Finally, during the plea colloquy, Dunn plainly admitted that the Government could prove the facts presented in the factual resume – including the purity level of the subject methamphetamine. (See Doc. 61 at 16-22). Counsel's performance cannot be deficient for failing to raise issues that have no merit. Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990). Accordingly, Dunn's counsel's failure to challenge the purity of the drugs did not fall below an objective standard of reasonableness, and Dunn has not established that he was prejudiced by his counsel's assistance. See Strickland, 466 U.S. at 687-88, 694. As a result, Dunn is not entitled to any relief on this ground.

> 2. Counsel failed to make an informed decision concerning the government's application of the 'purity-based penalties' for methamphetamine in petitioner's case.

Dunn categorically asserts that his counsel "failed to make an informed decision concerning the government's application of the 'purity-based penalties' for methamphetamine" (Doc. 64 at 4). Dunn's second claim fails for the same reasons as his first.

First, Dunn's ineffective assistance of counsel claim, as it relates to the actions of his counsel which occurred *prior* to the entry of his guilty plea, is waived. See Tollett, 411 U.S. at 267. Second, Dunn has not presented any facts to support his claim thereby rendering his claim insufficient. See Wilson, 962 F.2d at 998. Third, as stated above, the purity level of the subject methamphetamine was plainly stated within the factual resume that Dunn knowingly and voluntarily affirmed was true and accurate in every respect. Therefore, by pleading guilty, Dunn confirmed the amount and purity of the subject drugs. During the plea hearing, the Government read into the record the possible penalties Dunn faced for his crimes, including a sentence of ten years to life imprisonment as to count four and a minimum mandatory consecutive sentence of five years' imprisonment as to count six. (Doc. 61 at 8). Dunn affirmatively answered when asked whether he had discussed the possible sentencing guidelines with his counsel. (Id. at 10-11). The purity levels of the drugs and corresponding penalty levels associated with them were spelled out in the PSR

and Dunn made no objection to the PSR. (See Doc. 36; Doc. 60 at 3). In fact, at the sentencing hearing, Dunn confirmed that he had discussed the PSR with his counsel and understood the information contained therein. (Doc. 60 at 3). Accordingly, Dunn has not shown that his counsel's performance was inadequate or that any resulting prejudice occurred. See Strickland, 466 U.S. at 687–88, 694. As such, his claim is due to be denied.

     3.   Counsel failed to obtain the results of a toxicology test performed by an independent toxicology expert.

As with his previous claims, Dunn has not provided this Court with any facts to support his third claim of ineffective assistance of counsel, defeating his claim. See Wilson, 962 F.2d at 998. Although Dunn contends that his counsel should have obtained the results of an independent toxicology report, Dunn wholly fails to assert that the results would have contradicted the results obtained by the Government or would have otherwise affected Dunn's case. Dunn makes no argument that counsel's actions informed his decision to plead guilty, that his counsel's actions were objectively unreasonable, or that he was prejudiced by his counsel's actions. As a result, Dunn's third claim of ineffective assistance of counsel fails.

4. Counsel did not inform petitioner of the laws governing the sentencing factors and enhancements involved in a methamphetamine case.

Dunn's fourth claim of ineffective assistance of counsel likewise fails to point to any facts to establish that his counsel's actions were objectively unreasonable or resulted in prejudice. See Strickland, 466 U.S. at 687–88, 694. Moreover, Dunn's claim is directly contradicted by the record. During the plea hearing, the Government read into the record the possible penalties Dunn faced for his crimes, including a sentence of ten years to life imprisonment as to count four and a minimum mandatory consecutive sentence of five years' imprisonment as to count six. (Doc. 61 at 8). Dunn also affirmatively answered when asked whether he had discussed with his counsel the sentencing guidelines and how they might apply to his case. (Id. at 10-11). Finally, before accepting Dunn's plea, the Court explained to Dunn that it would not be able to determine his guideline range until the PSR was completed. (Id. at 11). Thus, whatever failure Dunn perceives on the part of his counsel in explaining the sentencing enhancements or consequences is not a professional error without which the result of the proceeding would have been different.

Further, the PSR detailed the offense level computation, Dunn's criminal history, and his guideline range, along with the Court's sentencing options. (Doc. 36 at 7-10, 13-14). At the sentencing hearing, Dunn stated under oath that he understood what

was stated in the PSR, and he made no objections to the PSR.  (See Doc. 60 at 3).  Moreover, the Court explained to Dunn the factors to be considered when imposing Dunn's sentence.  (Id. at 11-15). Accordingly, there are no facts which would support a finding that Dunn was not informed of the relevant sentencing factors prior to his sentence, or that the failure of defense counsel to inform Dunn "of the laws governing the sentencing factors and enhancements" resulted in prejudice.  Accordingly, this claim of ineffective assistance of counsel is due to be denied.

> 5. Counsel failed to present warranted objections to inaccuracies in the PSR, thereby denying petitioner's right to be sentenced based on accurate information.

Although Dunn asserts that his counsel failed to object to inaccuracies in the PSR, Dunn does not point to any inaccuracies that existed or the grounds upon which objections should have been made.  As a result, this alleged deficiency, like his others, amounts to nothing more than a bald, unsupported assertion which cannot sustain his claim.  See Wilson, 962 F.2d at 998.  Moreover, as detailed above, Dunn stated under oath during his sentencing hearing that he understood the contents of the PSR.  The record further reflects that Dunn made no objections to the PSR. Counsel's performance cannot be deficient for failing to raise issues that have no merit.  See Card, 911 F.2d at 1520.  As a result, Dunn has not established that his counsel's performance was deficient or that it resulted in prejudice.  See Strickland,

466 U.S. at 687.  Accordingly, Dunn's assertion that his counsel was ineffective for not objecting to the PSR is without merit.

      6.    Counsel failed to challenge the credibility or trustworthiness of MCSO Deputy Clint Law's proffered statements concerning petitioner's conduct upon his arrest.

Dunn fails to identify any statements made by Deputy Law that warranted a challenge and fails to assert any facts which call into question Deputy Law's credibility or trustworthiness.  Thus, Dunn fails to present any facts which would support a challenge to Deputy Law.  See Wilson, 962 F.2d at 998.  Finally, Dunn has made no argument and presented no facts that support the conclusion that his counsel's failure to challenge the credibility or trustworthiness of Deputy Law was unreasonable or resulted in prejudice.  See Strickland, 466 U.S. at 687.  As a result, Dunn's categorical assertion of ineffective assistance on this ground fails.

      7.    Counsel made no objections to the execution of the 'no-knock' search warrant, thereby failing to preserve the question of probable cause for the search as well as other errors of the Government and counsel.

Dunn's final claim of ineffective assistance of counsel fails for all of the same reasons previously stated hereinabove.  Again, Dunn makes no argument and provides no facts which would sustain his belief that his counsel should have objected to the execution of a 'no-knock' search warrant or "other errors of the Government and counsel," whatever those errors may be.  Dunn also fails to

argue, much less present factual support, for his suggestion that the search lacked probable cause. Accordingly, his claim is insufficient. <u>See</u> <u>Wilson</u>, 962 F.2d at 998. Dunn also makes no argument that his counsel's actions or inactions informed his decision to plead guilty, or that his counsel's failure to object supports a finding of deficient performance or resulted in prejudice. <u>See</u> <u>Strickland</u>, 466 U.S. at 687. "Claims that trial counsel gave ineffective assistance in regard to a Fourth Amendment suppression issue are among those challenges waived by a knowing and voluntary guilty plea." <u>Skow v. United States</u>, 2016 U.S. Dist. LEXIS 78360, at *5, 2016 WL 3344577, at *2 (N.D. Ga. June 16, 2016). As such, Dunn's claim should be denied.

Further, to the extent that Dunn's bald assertions could sustain his claim, the record belies his claim on the merits because the subject search warrant was supported by probable cause. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986). In this instance, in order to show that his counsel should have objected to the search warrant, Dunn must

show that his Fourth Amendment claim is meritorious because of a lack of probable cause, which he has not done and cannot do.

> "It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." <u>United States v. Hove</u>, 848 F.2d 137, 140 (9th Cir. 1988) "The focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at his home or business." <u>United States v. Procopio</u>, 88 F.3d 21, 28 (1st Cir. 1996). Thus, the affidavit must contain "sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." [<u>United States v. Pigrum</u>, 922 F.2d [249,] 253 [(5th Cir. 1991)].
>
> Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. <u>See</u> <u>United States v. Marion</u>, 238 F.3d 965, 969 (8th Cir. 2001).

<u>United States v. Martin</u>, 297 F.3d 1308, 1314 (11th Cir. 2002) (parentheticals omitted).

The affidavit of the deputy who applied for the search warrant in Dunn's case detailed that a confidential informant made a controlled purchase of methamphetamine from Dunn. (<u>See</u> Doc. 68 at 78-80). Specifically, the affidavit reflected that Dunn was observed leaving his residence to make the sale and arriving at the location of the transaction in a vehicle registered to his residence. The affidavit also reflected that the confidential informant's controlled purchase from Dunn was captured on video, and that Dunn was observed returning to his residence after the transaction. (<u>Id.</u> at 79). These facts establish a connection

between Dunn's possession of methamphetamine and the address to be searched (his residence), thus rendering the search warrant and resulting search valid. As a result, the record negates any assertion by Dunn that his counsel's failure to object to the search warrant was deficient or resulted in any prejudice to him. See <u>Strickland</u>, 466 U.S. at 687.

## IV.   CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rules Governing § 2255 Proceedings, R. 11(a). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." <u>Id.</u> at § 2253(c)(2).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner

must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (internal quotation marks and citations omitted).  A prisoner seeking a certificate of appealability "must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." Miller-El, 537 U.S. at 338 (internal quotation marks and citation omitted).

The undersigned finds that reasonable jurists could not debate whether Dunn's § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further. Accordingly, the undersigned finds that Dunn should be **DENIED** a certificate of appealability as to the present § 2255 motion.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rules Governing § 2255 Proceedings, R. 11(a).  If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  See, e.g., Brightwell v. Patterson, 2011 U.S. 54587, at *23-24, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), report and recommendation adopted, 2011 U.S.

Dist. LEXIS 54465, 2011 WL 1930662 (S.D. Ala. May 19, 2011); Griffin v. DeRosa, 2010 U.S. Dist. LEXIS 106920, at *12, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), report and recommendation adopted, 2010 U.S. Dist. LEXIS 106921, 2010 WL 3943699 (N.D. Oct. 5, 2010).

## V.    APPEAL *IN FORMA PAUPERIS*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3).

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. See Coppedge v. United States, 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." Sun v. Forrester, 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 515 (11th Cir. 1991).

Ghee v. Retailers Nat. Bank, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam).

Having considered the issues raised as set forth above, the undersigned **RECOMMENDS** that the Court certify that any appeal by

Dunn of the denial of his § 2255 motion would be without merit and therefore not taken in good faith.

### VI.    <u>CONCLUSION</u>

In accordance with the foregoing analysis, it is **RECOMMENDED** that Dunn's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 64) be **DENIED** and **DISMISSED with prejudice.** It is further **RECOMMENDED** that the Court find Dunn not entitled to a certificate of appealability or to proceed *in forma pauperis* on appeal because any appeal would not be taken in good faith.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper

objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **3rd** day of **April, 2024.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**